DMA 6/11/25

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America | CRIMINAL COMPLAINT |
|---|---|
| v. | CASE NUMBER: 25-3260 MJ |
| David Prince | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the dates described in Attachment A in the Counties of Maricopa and Cochise County, in the District of Arizona, Defendant David Prince, violated 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2, Material False Statement During the Purchase of a Firearm, Aid and Abet, described as follows:

**See Attachment A – Description of Counts**

I further state that I am a Special Agent (SA) for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and that this Complaint is based on the following facts:

**See Attachment B, Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

AUTHORIZED BY: Marcus Shand, AUSA  *MS*

James Cauble, Jr., SA for ATF
Name of Complainant

JAMES CAUBLE
Digitally signed by JAMES CAUBLE
Date: 2025.06.12 10:22:50 -07'00'
Signature of Complainant

Sworn to telephonically before me

June 12, 2025                                        at   Phoenix, Arizona
Date                                                           City and State

HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge
Name & Title of Judicial Officer

M Morrissey
Signature of Judicial Officer

# ATTACHMENT A
# DESCRIPTION OF COUNTS

### COUNT 1

**Material False Statement During the Purchase of a Firearm**

On or about April 14, 2024, in the District of Arizona, Defendant DAVID PRINCE aided and abetted a person, who knowingly made false statements and representations in connection with the acquisition of a firearm(s) to Grips by Larry, which were intended and likely to deceive Grips by Larry as to a fact material to the lawfulness of a sale of a firearm by Grips by Larry, which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Grips by Larry, in that this person did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, stating they were the actual transferee/buyer, whereas in truth in fact, they were purchasing the firearm(s) on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), and (2).

### COUNT 2

**Material False Statement During the Purchase of a Firearm**

On or about May 31, 2025, in the District of Arizona, Defendant DAVID PRINCE aided and abetted a person, who knowingly made false statements and representations in connection with the acquisition of a firearm(s) to Grips by Larry, which were intended and likely to deceive Grips by Larry as to a fact material to the lawfulness of a sale of a firearm by Grips by Larry, which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Grips by Larry, in that this person did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, stating they were the actual transferee/buyer, whereas in truth in fact, they were purchasing the firearm(s) on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), and (2).

## COUNT 3

### Material False Statement During the Purchase of a Firearm

On or about June 11, 2025, in the District of Arizona, Defendant DAVID PRINCE aided and abetted a person, who knowingly made false statements and representations in connection with the acquisition of a firearm(s) to Grips by Larry, which were intended and likely to deceive Grips by Larry as to a fact material to the lawfulness of a sale of a firearm by Grips by Larry, which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Grips by Larry, in that this person did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, stating they were the actual transferee/buyer, whereas in truth in fact, they were purchasing the firearm(s) on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), and (2).

## ATTACHMENT B

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, James Cauble, Special Agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), Phoenix, Arizona, being duly sworn, hereby depose and state:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. Your Affiant is a Special Agent with I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been since June 2021. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training in Glynco, Georgia. Prior to becoming an ATF Special Agent, I was a United States Border Patrol Agent, Department of Homeland Security, for six years, working along the southern border in Texas and Arizona. I also graduated from the Border Patrol training program at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am currently assigned to the ATF Phoenix Field Office, firearms trafficking unit.

2. During and prior to my tenure with ATF, I have been involved in investigations involving federal firearm violations, wire fraud, narcotics, human trafficking, arson, and explosives cases. I have reviewed investigative reports and had conversations with senior Special Agents who have advised of common firearms trafficking schemes and explained their methods of operations. I have become knowledgeable in the methods and modes used by firearms trafficking operations, as well as the language and patterns used. I am aware of techniques that are used to deter and hinder law enforcement investigations of firearms trafficking schemes, including the utilization of multiple cellular phones, planned distribution schemes, the utilization of firearm purchasing websites, the use of false and/or fictitious identities, and the use of "straw" purchasers.

3. The facts contained in this Affidavit are based in part on information provided to your Affiant by other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; intercepted calls and/or text messages; information provided by confidential sources; information provided by undercover

officers; information learned through seizures of contraband; and analysis of telephone toll records. Your Affiant also relies on my own experience, training, and background in evaluating this information.

4.  Based on the facts set forth in this Affidavit, your Affiant submits there is probable cause to believe that violations of 18 U.S.C. § 924(a)(1)(A): False Statement During the Purchase of a Firearm.

## BACKGROUND INVESTIGATION

5.  ATF, HSI, and IRS are conducting a joint investigation involving the trafficking of firearms by Transnational Criminal Organizations (TCOs) from the Phoenix metropolitan area to Mexico. During the course of this investigation, agents have seen a notable increase in cases, referrals, and data related to straw purchasing of large-caliber firearms and Federal Firearms Licensees (FFLs) with a pattern of activity consistent with complicity in the straw purchases that are recovered in Mexico in under 120 days.

6.  Agents have seen a major increase in firearms trafficking and at-risk FFLs being identified over the last year in Arizona. FFLs are determined to be "at-risk" based on an aggregation of several factors, including, but not limited to high volume of international traces, short recovery (TTC) period from date of purchase, multiple sales of the same type of firearm repeatedly to the same customer, information from interviews of straw purchasers and recruiters, sales of weapons of choice[1], and/or high-volume cash transactions. The length of time between the date of a firearm's last known purchase (often by the first retail purchaser, i.e. the FFL) to the date of its recovery by law enforcement in connection with a crime is commonly referred to as "time-to-crime (or TTC)," which is measured in days.

7.  This increase in firearms trafficking activities includes a surge in large quantity bulk cash purchases. These large quantity bulk cash purchases are indicative of Trade Based Money

---

[1] Weapons of Choice are firearms frequently trafficked to drug trafficking organizations. These firearms include commercially available belt-fed semi-automatic rifles (Ohio Ordnance M-2-SLR, Ohio Ordnance M240-SLR, and FN M249S), semi-automatic rifles (Barrett .50 Caliber "sniper rifles," AK-47 style, AR-15, and FN SCAR), and semi-auto handguns (Glock, Sig Sauer, Colt 1911 .38 Super, and Berretta M9 variants).

Laundering (e.g., the over-invoicing of Mexico-based cartel preferred firearms) sourced to these at-risk FFLs in Arizona. Moreover, several at-risk FFLs have significantly increased the prices of firearms to levels much higher than market value, in some cases 100% over MSRP. For example, a firearm retailing for $16,000 at one Phoenix-based FFL, will be sold at any of the currently identified at-risk FFLs for $35,000 or more. Thus, the profit-margin on these cartel preferred firearms, referred to by ATF as "weapons of choice" can be several thousand dollars, creating a strong incentive for some FFLs to "overlook" common red-flags when facilitating firearms transactions.

        8. Based on my training, experience, and consultation with other experienced firearms trafficking investigators, numerous past and current ATF investigations in Phoenix have shown that straw purchasers have routinely been recruited to purchase firearms in cities located within the State of Arizona to be smuggled into areas with more restrictive firearm laws or where firearms are harder to acquire, such as California or Mexico.

        9. Other common signs of firearms trafficking are purchasing the same firearm multiple times during a single purchase or on different occasions, using cash to complete the transaction, and not purchasing ammunition, gun safes, or other firearms accessories during the initial transaction. I know from my training, experience, and consultation with investigators more seasoned in firearms trafficking investigations that when people buy multiple firearms, pay cash, and do not purchase ammunition to shoot the firearms, these are common signs of straw purchasing. It is common for prohibited possessors to give money to straw purchasers, who often do not have criminal history, to purchase firearms on their behalf.

        10. Further, based on my training, experience, review of that information, and familiarity with this investigation, I learned that Lawrence GRAY, and his employee, DAVID PRINCE, utilizing the FFL Grips by Larry, have been, and are currently, selling large caliber, belt-fed, rifles and other weapons of choice to individuals they know are coordinating the trafficking of these items into Mexico. This investigation has shown that both GRAY and PRINCE are facilitating and encouraging the transfer of firearms to individuals who explicitly

convey that the firearms are destined for federally designated terrorist organizations. Additionally, through this investigation, I learned that GRAY and PRINCE, working together, along and knowingly transferred these firearms to straw purchasers and prohibited possessors.

## FIRST UC/CI BUY PRINCE (COUNT 1)

11. On April 14, 2025, ATF agents conducted a controlled purchase operation at the FFL Grips by Larry located in Sierra Vista, AZ. A confidential informant (hereinafter "CI") and an ATF agent operating in an undercover capacity, (hereinafter "UC"), purchased three firearms, for a purchase price of $42,000, from FFL Grips by Larry following previous telephonic negotiations between the CI and another Grips by Larry employee/manager named Barret WEINBERGER.

12. The CI negotiated the price of three armament level firearms, a Barrett, .50 caliber rifle, and two FN M249, belt-fed rifles. Once at the CI and UC arrived at the FFL, the CI first encountered the employee, PRINCE. PRINCE recognized the CI from the gun show the weekend prior, in which the CI straw purchased a Colt, .38, pistol, utilizing an individual other than the UC as a straw purchaser.

13. GRAY then greeted the CI, stating a hello and "long time no see." At that point, GRAY told PRINCE to grab the three firearms that were set aside. GRAY then told the CI that the price is $42,500, to which the CI informed GRAY that WEINBERGER and he/she had agreed to $42,000. GRAY apologized and honored the agreement made between the CI and WEINBERGER. The CI then handed the cash to the ATF UC in front of GRAY and PRINCE, who then handed the cash to GRAY. GRAY informed the pair that he will put the cash in a money counter to ensure the accuracy. While GRAY retreated to the back of the store, the employee gave the UC an iPad to complete a digital ATF form 4473. While the NICS background check was being conducted the CI asked GRAY if there was a checkpoint on the way back to Phoenix, AZ. GRAY replied, "yes but don't tell'em what you have." The CI then asked GRAY and PRINCE where the nearest border crossing was, both replied Aqua Prieta. The CI told them that he/she may just bring the guns directly to Mexico because it was so close.

## SECOND UC/CI BUY WITH PRINCE (COUNT 2)

14.  On May 31, 2025, ATF agents conducted a controlled purchase operation at the FFL Grips by Larry at the Phoenix, Crossroads, gun show. The CI and an ATF agent operating in an undercover capacity, (hereinafter "UC"), purchased two firearms, costing $26,250, from FFL Grips by Larry following price negotiations. The firearms purchased were an Ohio Ordnance M2-SLR, .50 caliber, belt-fed rifle and a Colt, .38 Super, pistol.

15.  The CI initially attempted to purchase the M2, .50 caliber, rifle using a confidential source, (hereinafter "CS"), prior to using the ATF UC. The CI initiated the conversation and negotiated the price with GRAY. Once the price was agreed upon the CI was directed to PRINCE. The CI informed PRINCE that the CS would be completing the ATF Form 4473.

16.  PRINCE notified the CI that the CS who filled out the paperwork that the background check had been delayed, meaning they would not be able to purchase the firearm immediately. The CI asked PRINCE if he/she could bring a different person to fill out the ATF Form 4473, PRINCE replied, yes. PRINCE told the CI that he would call if the CS's background check cleared in the meanwhile.

17.  Approximately 90 minutes later, the CI texted PRINCE's cell phone telling PRINCE to cancel the sale and that they were five minutes away. The CI returned to PRINCE with the ATF UC. PRINCE gave the UC the iPad tablet to fill out the ATF Form 4473 for the M2-SLR.

18.  While the UC was filling out the paperwork, the CI engaged GRAY about purchasing the Colt, .38 Super, pistol and a set of ornate grips bearing the image of rooster for the Colt. The CI purchased the grips for $250 and negotiated the price of the Colt with Gray for $4,000. The CI requested GRAY install them on the pistol. GRAY instructed PRINCE to add the additional purchase to the ATF Form 4473 and took the additional payment from the CI.

19.  While the background check was being completed for UC, the CI informed PRINCE that the rooster on the firearm represented the Jalisco New Generation Cartel (CJNG).

The CI continued to explain that the firearms were being sent to the CJNG Cartel in Mexico. PRINCE stated he understood and continued with the sale of the firearms. Once the background check cleared, the transaction was complete and both the CI and UC left the gun show with the firearms.

### THIRD UC/CI BUY (COUNT 3)

20. On June 11, 2025, ATF agents conducted a controlled purchase operation at the FFL Grips by Larry located in Sierra Vista, AZ. The CI called PRINCE on June 10, 2025, and asked him for another Colt, .38 Super, pistol. PRINCE stated he had several for sale. The CI and PRINCE agreed that the UC who filled out the ATF forms at the previous gun show (the ATF UC) could purchase the firearm on the CI's behalf at the store.

21. On June 11, 2025, the CI called PRINCE to verify that the UC could purchase the firearm. During the conversation, the CI informed PRINCE that the firearm being purchased would be going to Mexico with the other firearms they purchased.

22. When the UC arrived at the GBL FFL, the UC asked PRINCE if the CI had arranged the purchase, to which PRINCE responded affirmatively. The UC asked PRINCE what the model firearm would be, PRINCE stated the UC would purchase the "Oro" model Colt. PRINCE stated that the price of the firearm would be $4,000.

23. During the conversation the UC told PRINCE that the people "down south" (Cartel) liked the fancy firearms. The UC then stated that he had heard President Trump had designated Mexican cartels as terrorist organizations. PRINCE acknowledged the fact and mentioned he'd be willing to go to Mexico as a contracted civilian warfighter for American forces. The UC provided the $4,000 dollars for the firearm and departed with the firearm upon completion of the background check.

### CONCLUSION

24. For these reasons, your affiant submits that there is probable cause to believe David PRINCE violated 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2, Material False Statement During the Purchase of a Firearm, Aid and Abet.

25. I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

**JAMES CAUBLE** Digitally signed by JAMES CAUBLE
Date: 2025.06.12 10:23:25 -07'00'
_____
James Cauble
Special Agent
Bureau of Alcohol, Tobacco, Firearms, & Explosives

Sworn to and subscribed electronically this __12th__ day of June , 2025.

*M Morrissey*
_____
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge